IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

MICHAEL FRICKS,            )
                           )
      Plaintiff,          )
                           )
vs.                        )        4:12-CV-02026-LSC
                           )
CAROLYN W. COLVIN,         )
Commissioner of Social Security, )
                           )
      Defendant.          )

**MEMORANDUM OPINION**

**I.   Introduction**

The plaintiff, Michael Fricks, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. Fricks timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Fricks was forty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a General Education Diploma (GED). (Tr. at 17, 106, 140.) His past work experiences include employment as an automobile

mechanic and as a salvaging mechanic. (Tr. at 17, 31-32, 133, 155-62.) Mr. Fricks claims that he became disabled on October 20, 2008, due to lower back problems, left knee problems and high blood pressure. (Tr. at 48, 106, 132.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*.

Applying the sequential evaluation process, the ALJ found that the plaintiff last met the insured status requirements of the Social Security Act on June 30, 2009 (Tr. at 12.) The ALJ determined that Mr. Fricks did not engage in substantial gainful activity from the alleged onset of his disability through his date of last insured on June 30, 2009. (*Id*.) According to the ALJ, the plaintiff has the following "severe"

impairments: degenerative disc disease, hypertension, and degenerative joint disease of the knee, but they do not meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 12-13.) The ALJ did not find Mr. Fricks's allegations to be totally credible, and she determined that he has the following residual functional capacity through the date of last insured: sedentary work as defined in 20 C.F.R. § 404.1567(a) except he has hypertension, degenerative disc disease, and has had back surgeries with hardware placed that has been broken and removed, and he has pain from his back and knees (right knee gives way and the left knee needs replacement) such that he is limited to standing or walking for two to four hours out of an 8-hour workday; sitting for six to eight hours out of an 8-hour work day; can easily lift 10 pounds on a regular basis and 20 pounds occasionally; he has no problems using his arms for lifting, fingering, handling, or manipulating objects while sitting; he has degenerative disease of retina but still has visual acuity with no limitations for reading and handling objects. (Tr. at 13-14.)

According to the ALJ, Mr. Fricks is unable to perform any of his past relevant work. (Tr. at 17.) The ALJ found that Mr. Fricks is a "younger individual" and has at least a high school education as those terms are defined in the regulations. (*Id.*) Moreover, the ALJ determined that transferability of job skills is not material to the

determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. (Tr. at 18.) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as bench worker, circuit loader, and parts inserter. (Tr. at 18, 51.) Specifically, the ALJ used the testimony of Claude Peacock, a vocational expert ("VE"), to decide that there are a significant number of jobs for individuals with the same impairments. (Tr. at 48.) The ALJ concluded her findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 19.)

## II.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the

Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 11th Cir. 1984).

### III.   Discussion

Mr. Fricks alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he believes that the ALJ failed to properly consider his obesity and the resulting limitations. (Doc. 9 at 3.) Second, Plaintiff contends that the ALJ gave limited value to both the plaintiff's and VE's testimony due to "audio difficulties" at his hearing. (Doc. 9 at 1, 5.) Third, Plaintiff argues that the ALJ erred in relying on the VE's testimony, as it only addressed the availability of light work jobs, while the plaintiff's RFC was for limited sedentary work. (Doc. 9 at 6.)

### A.  Plaintiff's Obesity and Limitations

Plaintiff believes that the ALJ failed to properly consider his alleged limitations that were the result of his obesity. (Doc. 9 at 3.) When a plaintiff bases disability claims on pain or symptoms stemming from an underlying condition, the plaintiff must provide not only evidence of the condition, but also evidence that confirms the seriousness of the alleged symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Furthermore, an ALJ need not consider those conditions or symptoms that do not appear credible within the record. *See Crawford*, 363 F.3d at 1161; *see also May v. Comm'r of Soc. Sec.*, 226 F. App'x 955, 960 (11th Cir. 2007) (citing *Crawford* favorably and noting that ALJ need not consider claimant's hypotheticals based on discredited testimony); *Gordon v. Astrue*, 249 F.

App'x 810, 813 (11th Cir. 2007) (citing *Crawford* favorably and also finding that ALJ's hypothetical questions based on "the medical evidence and other evidence on the record that the ALJ found to be credible" was complete). Even if the condition exists, there has to be a record of treatments from an acceptable medical source that resulted in evidence affirming the impairment. *See* 20 C.F.R. § 404.1513(a)(stating that there is a need for evidence from an acceptable medical source to establish that a claimant has a medically determinable impairment.)

In this appeal, Plaintiff alleges that his obesity affected his ability to work and that the ALJ failed to take that factor into consideration. Plaintiff's claim lacks merit for several reasons. Mr. Fricks never alleged in his hearing that his obesity affected his ability to work. (Tr. at 32-38, 46.) Contrary to the claim, the disability reports and questionnaires that Mr. Fricks was asked to provide to the Social Security Administration do not reference his obesity as a basis for his disability or as a reason for medical treatment. (Tr. at 134-40, 169-72.) Throughout the entire time of his claim, Mr. Fricks reported that his back problems, knee problems and hypertension were the only causes for his alleged disability. (Tr. at 132.) Nor does he cite to any evidence in the record that references limitations caused by his obesity or identify the nature of these alleged limitations. Plaintiff's request for the Appeals Council to

review the ALJ's decision also does not identify the ALJ's treatment of obesity as an error. (Tr. at 104.) As the ALJ noted, Mr. Fricks never received treatment for his alleged obesity symptoms. (Tr. at 16.) Mr. Fricks did not attempt to see a specialist to receive treatment for his alleged obesity at any point in time throughout his alleged disability. *See* 20 C.F.R. § 404.1513(a). Dr. Cezayirli, a neurological surgeon, who performed plaintiff's polar fusion, and continued to treat him afterwards, made no statement about the alleged affects of the obesity. (Tr. at 15, 510-13.) In June 2000, more than five years before Plaintiff's earliest alleged disability onset date, the records reflect that Plaintiff gained weight after a knee surgery and that his weight played a role in his hypertension. (Tr. at 256.) But, no limitations caused by Plaintiff's weight are discussed. (*Id.*) Therefore, Mr. Fricks failed to provide evidence that confirms the seriousness of the alleged symptoms. *Dyer*, 395 F.3d at 1210.

Plaintiff now argues on appeal that his medical records documenting his weight and height conclude that he would be considered morbidly obese. (Doc. 9 at 3.) The majority of these records are dated from 2004 and 2005 and predate Plaintiff's original and amended onset dates. (Tr. at 488-538, 551-57.) Given Plaintiff's failure to put the ALJ on notice that he was alleging disability based on obesity and the lack of medical evidence regarding limitations caused by Plaintiff's alleged obesity, the ALJ was

correct in not attributing any limitations to Plaintiff's obesity. As the Eleventh Circuit has noted, "the claimant bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Thus, substantial evidence supported the ALJ's denial of benefits.

    B.    <u>Validity of Testimonies due to Audio Difficulties</u>

Plaintiff contends that the ALJ did not properly consider or evaluate his own testimony or the testimony of the VE due to "audio difficulties" at his hearing. (Doc. 9 at 1, 5.) A plaintiff must show that the lack of a record and the consequential loss of testimonies created an evidentiary gap, resulting in unfairness or clear prejudice. *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (finding that plaintiff was not prejudiced by a lack of representation because record did not contain any discernible evidentiary gaps).

In this case, parts of Plaintiff's and the VE's testimony are rendered "inaudible" in the transcript of the hearing, but the transcript as a whole provides an accurate picture of both testimonies. (Tr. at 48-54.) Indeed, the vast majority of Plaintiff's and the VE's testimony was transcribed within the administrative record and therein clearly states Plaintiff's condition and ability to work. (*Id.*) As a result, the recorded

information was sufficient and did not create any evidentiary gaps. *See Edwards*, 937 F.2d at 586.

More importantly, even if there was an evidentiary gap in the hearing transcript, the ALJ did not rely on the hearing transcript at the time she issued her decision. The transcript was only prepared after Plaintiff sought review in federal court. *See* 20 C.F.R. § 404.951(b), Hearing, Appeals, and Litigation Law Manual (HALLEX) I-4-1-12(E). Thus, the record contained sufficient evidence from Plaintiff's as well as the VE's testimony for the ALJ to make an informed decision.

    C.    <u>VE's Testimony on Availability of Jobs</u>

Plaintiff argues that the ALJ erred in relying on the VE's testimony as it addressed the availability of light work jobs, while the plaintiff's RFC was for limited sedentary work. (Doc. 9 at 6.) Plaintiff ultimately argues that because the ALJ based her reasoning on the VE's testimony in response to an allegedly-incomplete hypothetical, the disability determination should not stand.

An individual's RFC is an example of an issue based upon all of the relevant evidence of an individual's remaining abilities to work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). An RFC is administrative in nature, not medical, so the interpretation is left to the Commissioner. *See* 20 C.F.R.

§ 404.1546(c); Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.). The Commissioner decides administrative issues, and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). If the claimant is not able to perform his past relevant work, then the burden shifts to the ALJ to show that the claimant could perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(v); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2011). Finally, if the Commissioner demonstrates that there is work available in significant numbers in the national economy that the claimant can perform, then "the claimant must prove she is unable to perform those jobs in order to be found disabled." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Furthermore, there are overlapping categories, so if an individual is able to perform light work he or she will also be able to perform sedentary work. *See* 20 C.F.R. § 404.1567(b).

In this case, Plaintiff alleges that the ALJ should not have relied on the VE's testimony to find the existence of job opportunities in the national economy. (Doc. 9 at 6-7.) Upon properly assessing Mr. Fricks's RFC, the ALJ moved forward in the sequential evaluation process in order to determine if there were other job opportunities in the national economy due to Mr. Fricks's inability to continue his past

relevant work. (Tr. at 48-54.) The ALJ discussed this hypothetical with the VE, by asking him to consider the plaintiff's age, education, work history, and functional limitations. (Tr. at 49.) This hypothetical specifically asked the VE to consider jobs for someone who is limited to two to four hours of standing/walking in an eight-hour day, six to eight hours of sitting in an eight-hour day, lifting twenty pounds occasionally and ten pounds frequently—with no limitations on lifting, fingering, handling, or manipulating objects while seated. (*Id.*) The VE responded by noting multiple light and sedentary jobs that such a person could perform. (Tr. at 50-51.) Generally, an individual that performs light work can also perform sedentary work. *See* C.F.R. § 404.1567(b). The ALJ ultimately limited Plaintiff to a limited range of sedentary work (tr. at 13-14), and relied on the VE's testimony listing sedentary, unskilled jobs that Plaintiff could perform, including bench worker, circuit loader, and parts inserter. (Tr. at 18, 51.) This procedure is in accordance with the regulations for the sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty*, 245 F.3d at 1278. A comparison of the RFC and the VE's testimony in response to the hypothetical reveals that the specific limitations and results are identical. (Tr. at 13-14, 49-50.) Therefore, the RFC and the VE's testimony together created an appropriate range of jobs that an individual with the plaintiffs age, education and vocational history could

perform. *See Jones*, 190 F.3d at 1229-30. Consequently, the ALJ properly relied on the VE's testimony and its results in regard to the availability of jobs that Mr. Fricks could perform, and thus properly found he was not disabled.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Fricks's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 17th day of June 2013.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]